**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| United States of America, ) | Civil Action No. 9:16-2550-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| 269 Acres, *More or Less, Located in* ) | |
| *Beaufort County, State of South Carolina*; ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before the Court is the Landowners' motion for relief (Dkt. No. 211) from the Court's

September 26, 2019 order, which held the Landowners were not entitled to attorneys' fees or

litigation expenses and directed the parties to share equally in the expense of the Commission. For

the reasons set forth below, the Landowners' motion for relief is granted in part and denied in part.

**I.    Background**

The United States of America (the "Government") filed this action on July 15, 2016 to

impose a permanent restrictive easement over 269.22 acres of land (the "Property") located in

Beaufort, South Carolina, which the Landowners had owned in fee simple since 1955. (Dkt. No.

1.) The easement encumbers 179 acres of the 446.33-acre industrially zoned parcel and the entire

90.22-acre residentially zoned parcel. It restricts land development in the flight path of jets in and

out of the adjacent U.S. Marine Corps Air Station notwithstanding preexisting overlay zoning.

(Dkt. No. 140-1.)

The Court appointed a three-person Commission pursuant to Rule 71.1 of the Federal Rules

of Civil Procedure that was comprised of Jean H. Toal, Stephen A. Spitz and Alan J. Reyner. The

sole issue in dispute was the appropriate amount of just compensation due to the Landowners for

this constructive taking. After a three-day trial, the Commission issued its Report and Recommendation of just compensation, to which the Government objected. (Dkt. Nos. 164, 172.) After hearing oral arguments and reviewing the Commission's Recommendation *de novo*, the Court made specific findings of the pre- and post-taking values of both Industrial and Residential Parcel based on each's highest and best use, and found that the full award of just compensation due to the Landowners by the Government is $4,441,410.00. (Dkt. No. 180.) The Government has appealed this finding of just compensation, as well as the Court's finding of prejudgment interest, to the Court of Appeals for the Fourth Circuit.

## II.    **Legal Standard**

### A.    *Motion for Relief Pursuant to Rule 60*

Landowners move for relief from the September 26, 2019 order pursuant to Rule 60 of the Federal Rules of Civil Procedure (Dkt. No. 214 at 2), which provides in part that the district court, on a motion brought within a "reasonable time," may relieve a party from a final judgment or order for six enumerated reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable due diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or is based on an early judgment that has been reversed or vacated, or applying it prospectively is no longer equitable; or (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b), (c). The movant must demonstrate that it acted promptly, has a meritorious claim, and that the opposing party will not suffer prejudice by having the judgment or order set aside. *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993). If these threshold conditions are met, the district court determines whether the movant satisfies one of the six enumerated grounds for relief.

## B. *Attorneys' Fees and Litigation Expenses in Condemnation Proceedings*

The Fifth Amendment forbids the taking of private property for public use without "just compensation." U.S. Const. art. V. The compensation owed is the monetary equivalent of the property taken, which does not take into account indirect costs to the property owner caused by the taking. *United State v. Bodcaw Co.*, 440 U.S. 202, 203 (1979). Thus, "attorneys' fees and expenses are not embraced within just compensation." *Id.* The American Rule provides that parties bear their own legal fees, exceptions to which must be explicitly authorized by Congress. *In re Crescent Estates, LLC*, 588 F.3d 822, 825-26 (4th Cir. 2009). Imposition of costs against the Government is generally prohibited and may only be imposed "to the extent allowed by law." Fed. R. Civ. P. 54(d)(1). Congress explicitly authorized the imposition of certain costs and attorneys' fees in the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412.

The district court's interpretation of the EAJA is subject to *de novo* review, *United States v. 50.50 Acres of Land*, 931 F.2d 1349, 1356 (9th Cir. 1991), and the determination of eligibility for fees is reviewed for abuse of discretion, *Pierce v. Underwood*, 487 U.S. 552 (1988); *United States v. 515 Granby, LLC*, 736 F.3d 309, 314 (4th Cir. 2013). If the district court determines that the applicant is entitled to fees and expenses, the court "has considerable discretion in determining the amount of the fee award." *515 Granby, LLC*, 736 F.3d at 318. The court abuses its discretion when it makes a clear error of law. *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009). This "standard is deferential," *515 Granby, LLC*, 736 at 314, but requires a "suitably informed deference" that may entail a "canvassing of the relevant materials," *United States v. Paisley*, 957 F.2d 1161, 1166, n.3 (4th Cir. 1992).

## III. Discussion

As an initial matter, the Court finds that Rule 60 is an appropriate vehicle for the relief sought by the Landowners, notwithstanding the Government's argument that Rule 54(b) is the

appropriate vehicle. (Dkt. No. 213 at 1-2.) The Court entered the September 26, 2019 order before the deadline by which the Landowners could demonstrate their eligibility for fees and expenses had passed, and the Landowners now seek to "resolve what appears to be an administrative matter." (Dkt. No. 211 at 2.) The Landowners brought this Rule 60 motion within a reasonable time—twenty-eight days thereafter. The Court, therefore, considers the Landowners' arguments as brought under Rule 60 and declines to convert the motion as brought under Rule 54.

## A.    *Application for Attorneys' Fees*

"The primary purpose of the [EAJA] was to increase the accessibility to justice[.]" H.R.Rep. 99-120 at 8. The statute was enacted in response to concerns that putative applicants "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989). In 1985, the EAJA was amended to "extend[] and improve[] the liability of the United States for attorneys' fees and other expenses to certain parties who prevail against the United States[.]" H.R.Rep. 99-120 at 8.[1]

There are two methods for a district court to award attorneys' fees under the EAJA. First, the court must award "fees and other expenses" to the "prevailing party" against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Congress has referred to the second clause in this mandatory provision as the Government's "escape clause," H.R.Rep. 99-120 at 9, similarly referenced by the Court of Appeals for the Fourth Circuit as a "safety valve"

---

[1] Congress determined that such amendments to increase and expand access were required in light of the fact that only $3,000,000 in EAJA fees had been awarded as of 1984—an amount that was "dramatically less" than the $100 million annual cost estimated in 1981 and less than even higher amounts predicted by the Department of Justice. Similarly, in 1984, 21,000 parties were estimated to have prevailed against the United States under the EAJA, but only 277 parties applied for awards. *See* H.R.Rep. 99-120 at 8-9; H.R.Rep. 99-120 Part 2, at 3.

designed to "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of law that often underlie vigorous enforcement efforts." *Niken v. Holder*, 385 Fed. Appx. 299, 302 (4th Cir. 2001). This safety valve provides the district court with "discretion to deny awards where equitable considerations dictate an award should not be made." *Id.* Second, the district court may award fees to the "prevailing party" to the same extent any other party would be liable "under the common law" or statute. 28 U.S.C. § 2412(b). This method gives the court discretion to award fees where the Government acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hyatt v. Shalala*, 6 F.3d 250, 254 (4th Cir. 1993).

Both mandatory and discretionary awards are limited to an applicant that qualifies as an eligible "party," which the EAJA defines, relevant to this matter, as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." *Id.* § 2412(d)(2)(B). Similarly, an award under either method is available only to the "prevailing party," which the EAJA defines as, "in the case of eminent domain proceedings, as a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government." *Id.* § 2412(d)(2)(H).[2] If the applicant is both a "party" and the "prevailing party,"

---

[2] Although the EAJA defines both "party" and "prevailing party" "[f]or the purposes of" a mandatory award made under § 2412(d)(2), courts have consistently found that the § 2412(d) definitions also apply to those terms when used in other subsections, in light of the "presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). *See, e.g., Poche v. Joubran*, 644 F.3d 1105, 1109 (10th Cir. 2011) ("Although subsection (d)(4)'s language does not, by its terms, apply to sections (a) and (b), the statute as a whole makes the most sense when all of its provisions regarding 'prevailing parties' are read in the same way."); *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 388 n.1 (5th Cir. 2004) ("Prevailing party status is a prerequisite to recovering attorneys' fees under 28 U.S.C. § 2412(b)."); *Tex. Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 580 (5th Cir. 1996) ("A

the district court proceeds to consider, first, whether the fees sought are permitted "fees and expenses" under the statute. *Id.* § § 2412(d)(2)(A).[3] The court may then proceed to determine the reasonable amount of fees in light of the statutory cap on hourly rate and possible upward adjustments from that cap, *id.* § 2412(d)(2)(A), and, last, whether that amount must be apportioned to account for applicants who did not qualify as a "party."

### 1. William D. Trask, Jr. is a "party" under the EAJA.

The Court previously denied the Landowners' attorneys' fees application on the basis that they did not demonstrate a net worth of $2,000,000 or less as of July 15, 2016. *See Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 168 (4th Cir. 2004) ("[U]nder EAJA, the applicant bears the burden of establishing eligibility."). An EAJA applicant must make this eligibility showing of net worth where, as here, the Government made a "specific challenge to their financial eligibility for an award of fees." *United States v. 819.8 Acres of Land*, 133 F.3d 933 (Table), 1998 WL 3285,

---

[3] prevailing party is eligible for fees and expenses only if he meets that statutory definition of a party[.]"); *United States v. 50.50 Acres of Land*, 931 F.2d 1349, 1358 (9th Cir. 1991) ("We conclude that the legislative history of the amendment [§2412(d) definition of 'prevailing party'] reflects Congressional intent that the new definition was to apply to awards of both costs and fees."); *United States v. 5,507.38 Acres of Land*, 832 F.2d 882, 883-84 (5th Cir. 1987) ("A 'plain meaning' reading of the statute indicates that this subsection [2412(d)(1)(A)] applies only where it has been found that the private party 'prevailed' under § 2412(b) and thereby made a prima facie case of entitlement to fees."); *United States v. 87.98 Acres of Land More or Less in Donn Raymond Campion*, No. 03-6064 AWI LJO, 2006 WL 8445962, at *2 (E.D. Cal. Apr. 7, 2006) ("This language ['For purposes of' subsection 2412(d)] suggests that Section 2412(d)(2)(H) only defines 'prevailing party' for Section 2412(d) and not Section 2412(a) or Section 2412(b)," but "[o]ther circuits have, without discussion or mention of the textual limitation, similarly applied the Section 2412(d)(2)(H) definition to the whole of Section 2412."); *see also* H.R.Rep. 99-120 at 18 (explaining that amendment to define "prevailing party" in the case of eminent domain proceedings was intended to "make[] clear that condemnation cases are covered by the Act," including section (b)).

at *3 (10th Cir. 1998) (affirming denial of fees where landowners "apparently did not submit an affidavit or any other kind of proof of their financial status").

"Because the EAJA is a partial waiver of sovereign immunity, it must be strictly construed in the government's favor." *Texas Food Indus. Ass'n. v. U.S. Dep't of Agric.*, 81 F.3d 578, 580 (5th Cir. 1996). "The text of the EAJA does not define 'net worth' or give instructions on how to calculate an applicant's net worth." *Broaddus*, 380 F.3d at 166. But the statute's accompanying Committee Report and multiple courts of appeals provide that net worth "is calculated by subtracting total liabilities from total assets." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980); S.Rep. No. 96–253, 96th Cong., 1st Sess. 17 (1979); *accord, e.g., Broaddus*, 380 F.3d at 167 ("[N]et worth is calculated by subtracting total liabilities from total assets."); *Bolt v. Merrimack Pharm., Inc.,* 503 F.3d 913, 916 & n. 2 (9th Cir. 2007); *United States v. Heavrin,* 330 F.3d 723, 732 (6th Cir. 2003); *Shooting Star Ranch, L.L.C. v. U.S.,* 230 F.3d 1176, 1178 (10th Cir. 2000). Therefore, if an EAJA applicant proffers evidence that "allows the court to subtract liabilities from assets, thereby enabling the court to determine an applicant's net worth, then no further documentation is required." *Broaddus*, 380 F.3d at 169; *see also Fariasantos v. Rosenberg & Assocs, LLC*, No. 3:13-cv-543, 2015 WL 868090, at *6 (E.D. Va., Feb. 27, 2015) (applicant "need only provide sufficient evidence to allow the Court to determine its net worth").

"An affidavit of the party's net worth is generally sufficient evidence to prove net worth under EAJA." *Freeman v. Mukasey*, No. 04-35797, 2008 WL 1960838, at *2 (9th Cir. 2008); *see also Shooting Star Ranch, LLC v. United States*, 230 F.2d 1176, 1178 (10th Cir. 2000) ("bare assertion" of net worth from applicant and "unverified and unsworn letter from its accountant" are insufficient); *United States v. Prabhu*, No. 2:04-cv-00589-RCJ-LRL, 2007 WL 9734587, at *1 (D. Nev. Oct. 11, 2007) ("Courts have found such affidavits or other sworn statements of the fee movant or an accountant setting out the movant's assets and liabilities sufficient to demonstrate

-7-

net worth."). This is because an affidavit enables the district court to calculate net worth if it "includes documentation of the applicant's liabilities and assets." *Broaddus*, 380 F.3d at 169. Such documentation should conform with generally accepted accounting principles because "GAAP applies to EAJA." *Id.* at 167; *see also United States S.E.C. v. Univ. Exp., Inc.*, No. 04 Civ. 2322 (GEL), 2009 WL 1835915, at *7 n.12 (S.D.N.Y. June 25, 2009) (court may "reduce the weight to be given" to balance sheet that does not conform with GAAP).

The Landowners have carried their burden of demonstrating that William D. Trask, Jr. had a net worth of two million dollars or less on July 15, 2016. Mr. Trask has submitted a sworn affidavit in which he states that his net worth was $1,374,160.47. This affidavit is supplemented by an itemization prepared by Mr. Trask of his significant assets and liabilities at the time, including his 2014 inheritance of an 8.3% interest in the Property from his father, who purchased the land as a farmer. The Estate Tax Return also submitted reflects that this inheritance was valued at $4,553,071 in February 2014. In his sworn affidavit, expert land appraiser Thomas Hartnett opines, on the basis of six studies, that the value of the inheritance should be reduced by 35% to account for mere minority control over and the marketability of a fractional share in real property. (Dkt. Nos. 204, 205.) From these documents, the Court is able to subtract Mr. Trask's total liabilities from total assets to calculate his net worth on July 15, 2016.

The Government makes several arguments in opposition to Mr. Trask's proffered evidence of net worth, first that the itemization he submitted is a "self-serving document created in service of this litigation." (Dkt. No. 207 at 1.) Mr. Trask's affidavit and itemization are not self-serving because they are not merely his own "conclusory assertions and unsubstantiated speculation." *Larken v. Perkins*, 22 Fed. Appx. 114, 115 n.1 (4th Cir. Oct. 29, 2001). The documents submitted, moreover, comply with the Court's prior order for evidence to net worth. *See Direct Lineal Descendants of Jack v. Sec. of Interior*, No. 3:13-cv-00657, 2015 WL 1926737, at *3 (D. Nev.

Apr. 28, 2015) (affidavit of net worth sufficient where "Plaintiffs' showing here complies with the Court's previous Order, which instructed that each of them makes a good faith showing of their respective assets and liabilities").

The documents are, moreover, sufficient to enable the Court to calculate net worth and under the law of this Circuit governing the type of evidence that may be submitted. *See, e.g.*, *Broaddus*, 380 F.3d at 167 (reversing district court's denial of application because net worth demonstrated where applicant "also provided the district court with a sworn affidavit from a licensed real estate appraiser, [ ] who documented the value of Broaddus's two-third interest in Newcastle" inherited from his father); *Prabhu*, 2007 WL 9734587 at *1 (affidavit and itemization may be created by the applicant, not a CPA). The Government nonetheless argues that the Court cannot calculate net worth from the itemization because Trask Financial, LLC and certain real property are omitted assets. (Dkt. No. 207 at 7.) In response, Mr. Trask submitted a supplemental affidavit attesting that Trask Financial, LLC is not a financial asset and clarifying the ownership and value of the real property, as well as supporting income tax statements. (Dkt. No. 208.)

Next, the Government objects that Mr. Trask's Estate Tax Return values the Industrial Parcel he inherited at less than what Mr. Trask testified he thought it was worth at trial and less than what the Court determined it was worth for just compensation. (Dkt. No. 207 at 6.) This is misguided. To value the Industrial Parcel as now the Government's land, in order to determine just compensation, the Court considered the difference between its pre- and post-taking fair market values, which were identified on the basis of its highest and best uses. *Carolina Power & Light Co. v. Copeland*, 188 S.E.2d 188, 193 (S.C. 1972). To value the Industrial Parcel as a Landowner's asset, to determine net worth eligibility, "[t]he legislative history of the EAJA states in unmistakable language: 'In determining the value of assets, the cost of acquisition rather than fair market value should be used.'" *United States v. 88.88 Acres of Land*, 907 F.2d 106, 107 (9th Cir.

1990) (quoting HR. Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980)) ("The government is wrong" that value of land for net worth purposes should be set at the fair market value reached by the jury, rather than the applicant's acquisition cost).

Last, the Government requests that the Court "order discovery as to these assets so that there is a proper accounting as to their value." (Dkt. No. 2017 at 7.) This request is denied in light of the widely recognized principle that an EAJA "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Broaddus*, 380 F.3d at 169 (noting that the "determination of eligibility for EAJA fees should not result in a second trial, and [ ] some informality of proof should be allowed"); *Cont'l Web Press, Inc. v. NLRB*, 767 F.2d 321, 323 (7th Cir. 1985) ("The proceeding to recover fees under the [EAJA] is intended to be summary[.]"). In fact, the 1985 amendment to the EAJA that clarified § 2412(d) was intended "to limit discovery in EAJA fee proceedings." H.R.Rep. No. 99-120 at 7. Because the affidavits, itemization, and Estate Tax Return enable the Court to subtract total liabilities from total assets, additional discovery into Mr. Trask's July 15, 2016 net worth is not warranted.

The Court finds that the Landowners have satisfied their burden of demonstrating that William D. Trask, Jr. had a net worth of $2,000,000 or less on July 15, 2016 and, therefore, that he qualifies as a "party" under the EAJA.

### 2.    The Landowners are the "prevailing party" under the EAJA.

The EAJA defines the "prevailing party" as, "in the case of eminent domain proceedings, [ ] a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government." 28 U.S.C. § 2412(d)(2)(H). "In other words,

the prevailing party is the one whose testimony in court is closer to the award. If the award is exactly in the middle, it gives the benefit to the property owner." H.R.Rep. 99-120 at 18.[4]

Here, the "property involved" is the encumbered acreage—not the entire property owned—which was 179 acres out of the 466.33-acre Industrial Parcel and all of the 90.22-acre Residential Parcel. At the trial before the Commission, the Landowners and Government offered testimony on valuation of the encumbered acreage from their respective expert land appraisers, Thomas Hartnett and Haywood Newkirk. For the Landowners, Mr. Hartnett testified that the value of the encumbered Industrial Parcel was $2,685,000 and the value of the encumbered Residential Parcel was $1,251,802,50. (Dkt. No. 154 at 90, 110.)[5] Combined, Mr. Hartnett testified that the valuation of the encumbered acreage was $3,936,802.50. This is the highest value of the "property involved" testified to on behalf of the Landowners at the trial.[6] For the Government, Mr. Newkirk testified

---

[4] The Court considers only the valuation testimony offered "at the trial" before the Commission and does not consider valuations referenced by witnesses in other proceedings "in court."

As noted, the EAJA limits valuation testimony to that offered "at trial," but in the statute's legislative history Congress referred more broadly to valuation testimony given "in court." H.R.Rep. 99-120 at 18. However, further review of the legislative history clarifies that Congress's reference to "in court" was meant merely to exclude from the district court's analysis valuations supplied "in settlement negotiations or agreements," H.R.Rep. 99-120 at 18, and was not intended to signal the district court to consider all valuations mentioned in any court proceeding outside the trial on just compensation. Indeed, Congress amended the definition of "prevailing party" with "hopes that the amendment will result in bringing the Government and the property owner closer together in their land valuations, since they would both have the extra incentive of being determined the prevailing party under" the statute. H.R.Rep. 99-120 at 19. These hopes belie any argument that the district court should rely on the potentially large and disparate set of valuations from testimony given simply "in court."

[5] Specifically, Mr. Hartnett testified that the encumbered 179 acres of the 446.33-acre Industrial Parcel was worth $20,000/acre before the easement, and $5,000/acre under the easement, and that the encumbered 90.22-acre Residential Parcel was worth $18,500/acre before the easement, and $4,625/acre under the easement.

[6] Landowners Harold Trask and John Trask also testified at trial as to their own opinions of valuation, but not of the "property involved." Harold testified, "My opinion is our property is worth in the area of $30,000 an acre" and that the entire 269 acres were taken. (Dkt. No. 154 at 51:12-21.) This is an opinion of the value of the entire property (which was actually 536.55 acres), not of the encumbered "property involved." John then testified that, in his opinion, the value of

that the value of the encumbered Industrial Parcel was $805,500 and the value of the encumbered Residential Parcel was $703,716. (Dkt. No. 155 at 520:15-18; 530:15-19.)[7]  Combined, Mr. Newkirk testified that the valuation of the encumbered property was $1,509,216. This is the highest valuation of the "property involved" attested to at trial on behalf of the Government.

The final judgment was $4,441,410. (Dkt. Nos. 180, 202.)  The highest value attested to by Mr. Hartnett for the Landowners—$3,936,802.50—is closer to $4,411,410 than is the highest value testified to by Mr. Newkirk for the Government—$1,509,216.  The Landowners are, therefore, the "prevailing party" under the EAJA.

### 3.    The Government's position was not "substantially justified."

The Court declines to find that the Government acted in bad faith such that a discretionary award under § 2412(b) is warranted. *See Gate Guard Servs., L.P.*, 792 F.3d at 561 ("A party should not be penalized for maintaining an aggressive litigation posture and a court should award fees only in extraordinary cases."); *Show, Inc. v. United States*, 2016 WL 6538253, at *5 (N.D. Tex. Mar. 3, 2016) (finding that "unreasonable and obdurately obstinate conduct is not tantamount to bad faith under § 2412(b)).  The inquiry is, therefore, whether the "position of the United States was substantially justified" to prohibit an otherwise mandatory award to the prevailing Landowners under § 2412(d).

Substantial justification is "more than mere reasonableness." H.R.Rep. 99-120 at 9, 12-13, 17.  Identifying substantial justification requires assessment of both the agency "activity that

---

the property taken was $28,000 to $30,000 per acre. (Dkt. No. 155 at 195:23-24.)  But by giving the same opinion Harold just had, and in light of apparently no witness sequestration, John also appears to refer to the entire property owned rather than the encumbered "property involved."

[7] Mr. Newkirk testified that the encumbered 179 acres of the Industrial Parcel were worth $7,500 per acre before the easement and $3,000 per acre under the easement, and that the encumbered 90.22-acre Residential Parcel was worth $4,800 per acre before the easement and $3,000 per acre under the easement.

formed the basis of the litigation" and litigation positions taken by the Government's lawyers. *Id.* Therefore, the "test of whether the government's position was substantially justified" is "for the district court to focus upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witness during trial, rather than the relationship between the government's offer or deposit and the property owner's counter offer, if any, or the jury award." *United States v. 312.50 Acres of Land*, 851 F.2d 117, 118-19 (4th Cir. 1988). "In the eminent-domain context, a position is substantially justified when the government's refusal to offer more to the property owners as just compensation ha[s] a reasonable basis in fact and in law." *515 Granby, LLC*, 736 F.3d at 315. The district court's review for substantial justification is limited to the record because the statute contemplates that "[n]o additional discovery of the government's purpose will be necessary." H.R.Rep. 99-120 at 13, 17.

Here, the Government has not met its burden of demonstrating its pre-litigation actions and litigation positions were substantially justified. Most significantly, the Government took three different stances on valuation for determination of just compensation, including changing tack during the litigation: first, by proposing that just compensation approximated $1,091,000 (Dkt. No. 7); then, during litigation, by arguing that the Industrial Parcel's pre-taking value was $7,500 per acre on a highest and best use of industrial development (Dkt. No. 155 at 520:15-17; Gov. Tr. Ex. 1 at 103); and, last, by arguing that the Industrial Parcel's pre-taking value was $9,800 per acre on a highest and best use of solar development (Dkt. No. 172 at 23). "To be clear, because the government has the burden of proving substantial justification, it has the onus of justifying the changes in its valuation figures." *515 Granby, LLC*, 736 F.3d at 317. "For each government valuation position in a condemnation proceeding, the district court should start by asking whether the government's refusal to offer more to the property owners as just compensation had a reasonable basis in fact and law." *Id.* (internal quotation marks omitted). Considering "the

-13-

government's explanations for changes in its asserted valuations," the Court cannot conclude that each of its three positions had a reasonable basis in both fact and law. *Id.*[8] Similarly, the Government sought to discover the Landowners' personal information irrelevant to the value of the property encumbered in 2016, such as whether Harold Trask has an "in-ground pool" and is a "member of any country clubs" in 2019. (Dkt. No. 186-2 at 405.)[9] The district court may assess such "precondemnation negotiations, discovery, pretrial motions practice, and settlement negotiations." *515 Granby, LLC*, 736 F.3d at 317.

For these reasons, the Court finds that the Government has not satisfied its burden of demonstrating its conduct before and during the litigation was substantially justified.[10] As a result, the Landowners remain entitled to a mandatory award of attorneys' fees under § 2412(d).

### 4. Calculating the Reasonable Amount of Attorneys' Fees

"If the petitioning party is entitled to fees and expenses, the district court has considerable discretion in determining the amount of the fee award." *Id.* at 318; *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 675 (3d Cir. 1983) ("Absent error of law, determination of the reasonableness of the fee is for the district court[.]"). The district court's determination of the amount of fees is

---

[8] Notwithstanding the legislative history's indication that "more than mere reasonableness" is required, some courts appear to interpret that "test is essentially one of reasonableness." *Citizens Council of Delaware Cnty. v. Brinegar*, 741 F.2d 584, 593 (3d Cir. 1984). Were it the case that mere reasonableness suffices, the Court would find that forwarding three different valuations for the same piece of land is inherently unreasonable.

[9] As Mr. Trask described on direct examination at trial: "They deposed me for seven hours. They asked questions, the same questions over and over and over again. When we got into the latter part of the day, I remember you objecting to—they were asking me personal information, like what sort of car my wife drove and how many bedrooms I had in my house. You objected, and they said, I remember them specifically saying, 'We have seven hours.' And that was a grueling—I'm a lawyer, I've been involved in depositions. It was a grueling, and I think intimidating process that we were subjected to during that time." (Dkt. No. 154 at 52:22-53:6.)

[10] There is no reasonable basis on this record to find "that special circumstances make an award unjust." 28 U.S.C. 2412(d)(1)(A).

reviewed for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 571 (1988). The reviewing court "will find such abuse if the district court applied 'mistaken legal principles' or made 'clearly erroneous factual findings.'" *Priestley v. Astrue*, 651 F.3d 410, 415 (4th Cir. 2011) (quoting *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001)).

The EAJA provides that the "amount of fees awarded under [§ 2412(d)] shall be based upon prevailing market rates for the kind and quality of the services furnished;" however, "attorney fees shall not be awarded in excess of \$125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). "[C]ourts routinely approve cost-of-living adjustments." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004) (internal quotation marks omitted). The limited availability of qualified attorneys for the proceedings "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce*, 487 U.S. at 572. Other special factors that may warrant adjustment "are not of broad and general application." *Id.* at 573. Therefore, the novelty and difficulty of issues, desirability of the case, work and ability of counsel, results obtained, and use of a contingency fee are not qualifying special factors here. *Id.*

### i. The total reasonable fees are \$593,301 at a partially adjusted rate of \$250 per hour.

The Landowners seek \$687,602.50 in attorneys' fees, which represents a contingency fee on the \$4,441,410 judgment for the approximately 2,375 hours[11] of work provided from August 1, 2016 to May 31, 2019. (Dkt. No. 186-3 ¶ 4 and 37.)

---

[11] Landowners' counsel's timekeeping submissions appear to indicate both 2,375 and 2,372 hours expended. (Dkt. No. 186-3 at 37.)

The timekeeping and billing submissions submitted by the Landowners' counsel appear to indicate that out of these 2,375 hours of work provided, 2,492.8 hours were by attorneys, 516 hours were by a paralegal and one hour was by a librarian. (Dkt. No. 186-3 at 37.) A paralegal or law clerk's time is recoverable in an EAJA attorneys' fee application. *See, e.g.*, *Moreland v. Astrue*, No. 4:08-cv-3902-CMC, 2010 WL 2851119, at *3-4 (D.S.C. July 16, 2010). But "courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). This can be done by submitting information on the prevailing market rate for that profession or an affidavit detailing the professional's experience and education. *See Role Models Am., Inc.*, 353 F.3d 962, 970 (D.C. Cir. 2004). Courts have declined to reduce an insufficiently justified attorney's rate when the court will reduce the rate to the statutory cap, in any event. *See, id.*

Regarding the number of hours expended, the Court finds the quantity is reasonable in light of this litigation's protracted duration and its extensive discovery and motion practice. The Court is able to reach this conclusion because counsel do not lump timekeeping entries together, and include adequate detail to indicate the purpose of each task and individual involved. *See, e.g.*, *id*. Regarding the hourly rate itself, counsel's submissions reflect that all billing professionals, except two, billed at a rate of over $125 per hour. (Dkt. No. 186-3 at 37.) Therefore, the hourly rate awarded must be reduced to the statutory cap, unless an increase for the cost of living or a special factor justifies a higher fee. Here, the Court finds the Landowners are reasonably entitled to a rate increase for the cost of living. *See Pierce v. Underwood*, 487 U.S. 552, 553 (1988).[12] Indeed, the

---

[12] The Government contends that in *Pierce*, the U.S. Supreme Court is "stating that contingency fees are not directly reimbursable under the EAJA." (Dkt. No. 188 at 23.) This is a misstatement of the law. The *Pierce* Court merely found that the district court erred by considering "the contingent nature of the fee" as a statutory "special factor" that could warrant an upward adjustment from the statutory cap.

Government sought to impose the easement on the Landowners' property precisely because the South Carolina Lowcountry is in such a period of economic development that construction on the land, potentially in the path of jets, was apparently imminent. William D. Trask, Jr., for example, continues to reside in the Lowcountry, and therefore an increase for the cost of living associated with the area is warranted here. A higher fee is also warranted for the limited availability of qualified attorneys for these proceedings. This special factor refers to "attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their legal competence." *Id.* at 572. A review of attorneys in the Charleston area specializing in eminent domain proceedings reflects an actual shortage of qualified attorneys who could purport to handle this complex case.

For these reasons, the Court finds that the appropriate hourly rate for the attorneys who billed at a rate of more than $125 per hour is $250 per hour. The hourly rate of the two professionals who billed at a rate of $120 per hour remains unchanged. Calculated from the counsel's summary of the number of hours worked by each professional (Dkt. No. 186-3 at 37), the total adjusted fee award is $593,301.00:

| Professional | Hours | Adjusted Hourly Rate | Reasonable Fee |
|---|---|---|---|
| B. Waring | 0.40 | $250 | $100 |
| P. Dominick | 635.00 | $250 | $158,750 |
| C. McNair | 9.20 | $250 | $2,300 |
| A. Austin | 1,181.40 | $250 | $295,350 |
| J. Wall | 0.60 | $0.00[13] | $0 |
| C. Shoun | 9.50 | $250 | $2,375 |
| M. Infinger | 20.00 | $250 | $5,000 |

---

[13] This professional does not appear to have billed for his or her time. (Dkt. No. 186-3 at 37.)

| Professional | Hours | Adjusted Hourly Rate | Reasonable Fee |
|---|---|---|---|
| E. Williams | 1.30 | $120 | $156 |
| D. Leclerc | 0.30 | $250 | $75 |
| M. Trevino | 516.30 | $250 | $129,075 |
| C. Wolf | 1.0 | $120 | $120 |
| | | Total Reasonable Fees: | **$593,301.00** |

ii.    **The $593,301 fee is apportioned to account for ineligible Landowners.**

Although the "EAJA itself makes no provision for apportionment" of attorneys' fees, courts routinely allocate reasonable fees on a pro rata basis where fewer than all applicants are an eligible "party." *Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, 2017 WL 3096105, at *15 (9th Cir. June 27, 2017). *See, e.g., AARP v. EEOC*, 873 F.2d 402, 406 (D.C. Cir. 1989) (holding that "the United States may be liable for attorneys fees to some plaintiffs who qualify under EAJA, but in the same litigation, may not be liable to other plaintiffs who do not or would not, if they applied, qualify under the EAJA"); *Sierra Club v. U.S. Army Corp of Eng'rs*, 776 F.2d 383, 393-94 (2d Cir. 1985) (awarding EAJA fees based on ratio of eligible plaintiffs to total plaintiffs); *Citizens Council v. Brinegar*, 741 F.2d 584, 597-98 (3d Cir. 1984) (remanding for determination of EAJA fees allocable to two eligible plaintiffs where four had applied). "[A]pportionment is required even where the ineligible parties' participation is nominal or narrow." *Pollinator Stewardship Council*, 2017 WL 3096105, at *16; *see also United States v. 27.09 Acres of Land*, 43 F.3d 769, 774 (2d Cir. 1994) ("Where the role of the ineligible party is nominal or passive, then EAJA fees will be available to the eligible parties—subject, of course, to apportionment, and assuming that no other reason justifies denial of the application.")

Here, the Landowners met their burden of demonstrating that Landowner Harold Trask is an eligible "party" under the EAJA, but offered no evidence or argument as to any of the other six

Landowners. "The government cannot be required to reimburse under EAJA the portion of the representation attributable to" ineligible applicants. *Pollinator Stewardship Council*, 2017 WL 3096105, at \*17. Accordingly, based on the ratio of one eligible "party" to six ineligible applicants, William D. Trask, Jr. is awarded one-seventh of the $593,301 in reasonable attorneys' fees, which is **$84,757.29**.

## B. *Application for Litigation Expenses*

The EAJA provision entitling the prevailing party to a mandatory award of attorneys' fees provides for "fees and other expenses," which the statute defines to include the cost of expert witnesses and studies or analysis. 28 U.S.C. § 2412(d)(2)(A). This "broad definition of 'fees and expenses' in the EAJA indicates, without much doubt, that Congress intended to award a wide range of fees and expenses to the prevailing party in litigation with the government, unless one of the exceptions applies." *Priestley v. Astrue*, 651 F.3d 410, 416 (4th Cir. 2011). The statute also provides that the recipient of a mandatory award is entitled to "any costs awarded pursuant to subsection (a), incurred by that party" in the litigation, unless the Government's position was substantially justified. 28 U.S.C. § 2412(d)(1)(A). Subsection (a) provides that "a judgment for costs, as enumerated in section 1920 of this title . . . may be awarded to the prevailing party in any civil action brought by or against the United States[.]" 28 U.S.C. § 2412(a)(1). Section 1920 provides that the district court "may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under Section 1828 of this title." 28 U.S.C. § 1920.

The Landowners seek $37,998.60 in litigation expenses incurred as of May 31, 2019, which includes $15,845 to retain Mr. Hartnett and $12,347.13 for court reporters and deposition transcripts. (Dkt. No. 173-1 ¶¶ 10, 12; No. 186 at 7; No. 186-3 ¶ 8.) The Government contends that the Landowners are not entitled to these expenses because they are not the "prevailing party." (Dkt. No. 213 at 1.) The Court has determined that the Landowners were the "prevailing party" and, therefore, they are entitled to a mandatory award including their litigation expenses. *See, e.g.*, *United States v. 50.50 Acres of Land*, 931 F.2d 1349, 1359 (9th Cir. 1991) ("We conclude that the legislative history of the amendment reflects Congressional intent that the new definition [of 'prevailing party' to condemnation proceedings] was to apply to awards of both costs and fees."); 10 Fed. Prac. & Proc. Juris. § 2674 (4th ed.) ("[S]ince the 1985 amendment, it is now clear that condemnees can be awarded costs or attorney's fees if they prevail as defined in the statute[.]").

As to the amount of expenses, the Landowners supplied an itemization and sworn affidavit from counsel. (Dkt. No. 173-1 at 46; No. 186-3 at 39.) Courts have noted that they "cannot base awards under the EAJA on unsupported assertions" and therefore require "reasonably specific documentation concerning the actual work done[.]" *Cmty. Heating & Plumbing Co., Inc. v. Garrett*, 2 F.3d 1143, 1146 (Fed. Cir. 1993). Although the Landowners did not provide specific documentation regarding the work done by Mr. Hartnett, the Court deciphers from the voluminous record that Mr. Hartnett was contacted in 2016 as an expert appraiser; asked to advise on just compensation; prepared his appraisal report by visiting the Property, conducting market research, and analyzing comparable sales; and testified extensively at trial. (Trial Tr., Dkt. No. 154 at 89-185.) Expenses incurred for court reporters and deposition transcripts are similarly self-evident from the record. Although the Landowners are entitled to litigation expenses, the amount sought must be apportioned to account for one eligible "party" and six ineligible applicants. Therefore,

the Landowners are awarded one-seventh of the amount sought, or **$5,428.37** in litigation expenses.

## C.   *Expense of the Commission*

The Landowners also seek relief from the Court's September 26, 2019 order directing the Landowners and the Government to share equally in the $71,150 expense of the Commission. Landowners argue that this expense should be entirely allocated to the Government because Rule 71.1 of the Federal Rules of Civil Procedure states that it governs condemnation proceedings, Rule 71.1(*l*) states that "Costs are not subject to Rule 54(d)," and the advisory committee's Note to Subdivision (*l*) states, "Since the condemnor will normally be the prevailing party and since he should not recover his costs against the property owner, Rule 54(d), which provides generally that costs shall go to the prevailing party, is made in applicable. . . . 'Such normal expenses of the proceeding as . . . commissioners' fees . . . are properly charged to the government, though not taxed as costs.'" (quoting Dep't of Justice, Lands Division Manual 861).

The condemnor was not the prevailing party, here. Therefore, Rule 71.1(*l*)'s advisory note guidance—that the expense of a commission should be charged to the government because it is normally the prevailing party—is not directly applicable. Even if the Government were the prevailing party, Rule 71.1 does not bar the Court from relying on Rule 53. Rather, Rule 53 governs the authority of Masters, who are analogous to Commissioners appointed under Rule 71.1.[14] It requires the Court to "fix the [ ] compensation and terms of payment," and mandates that the expense be "paid either by a party or parties; or from a fund or subject matter of the action within the court's control." Fed. R. Civ. P. 53(g)(1), (2). In short, "[a]lthough Rule 71.1 is itself silent regarding the issue of compensation of commissioners, the approach set forth in Rule 53 for

---

[14] "A commission has the powers of a master under Rule 53(c)." Fed. R. Civ. P. 71.1(h)(2)(D).

compensating masters who perform a similar function appears reasonable." *Guardian Pipeline, L.L.C. v. 295.49 Acres of Land*, No. 08-C-0028-WCG, 2008 WL 2482005, at *4 (E.D. Wis. June 18, 2008). District courts have provided, in their discretion, that a term of payment is the parties' equally bearing the expense of the commission.[15]

The Landowners' motion for relief from the portion of the September 26, 2019 order directing that the parties share equally in the $71,150 expense of the Commission is denied.

## IV. <u>Conclusion</u>

For the foregoing reasons, the Landowners' motion for relief (Dkt. No. 211) is **GRANTED IN PART** and **DENIED IN PART**. Landowner William D. Trask, Jr. is awarded $84,757.29 in attorneys' fees and $5,428.37 in litigation expenses. The Landowners and the Government remain directed to share equally the $71,150 expense of the Commission.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

January 15, 2020
Charleston, South Carolina

---

[15] Separate from the argument that equally sharing the cost of the Commission is reasonable under Rule 53, the Government contends that it is common practice in high-value condemnation proceedings and provides three orders from sister district courts to support this contention. (Dkt. No. 213 at 5.) The Court's review of the briefing underlying those orders is instructive. To be clear, the District of Pennsylvania's order was on a consent motion; the District of New Mexico's order was on a joint stipulation; and the District of Nevada's order, apparently on an actually disputed issue, relies on three other decisions, one of which is this Court's own February 8, 2018 order that directed equal sharing of this commission, which was supplied to the District of Nevada court by the Government. *See 400 Acres of Land More or Less*, No. 2:15-cv-1743-MMD (D. Nev. Sept. 26, 2019), Gov. Ex. at Dkt. No. 510-3. Nevertheless, as the Government raises, there is a practice of district courts providing that parties to a condemnation action equally share the expense of a commission.